J-A06016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEL MARTINEZ-COLON | : | |
| | : | |
| Appellant | : | No. 3088 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 14, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000003-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOEL MARTINEZ-COLON | : | |
| | : | |
| Appellant | : | No. 3089 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 14, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000004-2019

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                **FILED APRIL 15, 2025**

Joel Martinez-Colon appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after his conviction of numerous sex offenses he committed against his daughter and stepdaughter. Martinez-Colon challenges the sufficiency of the evidence, the weight of the

_____

[*] Former Justice specially assigned to the Superior Court.

evidence, the legality of his sentence and the discretionary aspects of his sentence. After careful review, we affirm in part, reverse in part, and vacate in part.

Martinez-Colon sexually abused his stepdaughter, L.R., and his biological daughter, A.R., for a period of three years. L.R. and A.R. were approximately 7 and 11 years old, respectively, when the sexual abuse began. In 2018, A.R. disclosed to her cousin that Martinez-Colon was sexually abusing her. Her cousin told A.R.'s mother who called the police. Martinez-Colon was arrested shortly after. L.R. and A.R. further disclosed the sexual abuse they endured during their interviews with the Philadelphia Children's Alliance (PCA). Martinez-Colon was charged with 23 counts of offenses related to the sexual abuse of L.R. and 16 counts for his sexual abuse of A.R.

A bench trial occurred on May 9, 2023. The Commonwealth presented the testimony of L.R. and A.R. and their recorded interviews with the PCA. Martinez-Colon took the stand and denied the allegations. The trial court summarized L.R. and A.R.'s version of events.

> Mr. Martinez-Colon came into L.R.'s life when she was six years old. N.T., 05/09/2023, at 75. She thought of him like a father. *Id.* at 75:3-5. Mr. Martinez-Colon began sexually abusing L.R. when she was seven or eight years old. Ex. C-4, at 12:00-12:10; N.T., 05/09/2023, at 75. The abuse did not stop until Mr. Martinez-Colon was arrested in 2018, when L.R. was ten years old. Ex. C-4, at 12:10-12:22.
>
> L.R. recounted many incidents when Mr. Martinez-Colon locked her inside her bedroom with him. Ex. C-4, at 19:45-19:50, 26:40-27:16. He would often lick her and expose his penis to her during these incidents. *Id.* at 19:40-20:10. Sometimes when she

attempted to leave the room, he would grab her hand and squeezed it tightly, causing her pain. *Id.* at 26:50-27:16.

She also recounted an incident when Mr. Martinez-Colon pushed and wrestled with her. *See generally* Ex. C-4; *see also* N.T., 05/09/2023, at 80-81. She told him to stop and ran into her room to escape him. N.T., 05/09/2023, at 80-81. He chased after her and opened the locked bedroom door. *Id.* He then pushed her onto the bed, straddled her, used his hand to rub her body and breast under her shirt, and licked her neck and chest. *Id.* at 81-84; Ex. C-4, at 20:40-21:00.

In addition to these day-time assaults, Mr. Martinez-Colon would vaginally and anally rape L.R. during the night in her bedroom. *Id.* at 12:00-12:04. L.R. explained that he had done the anal penetration "for a long time," *id.* at 17:22-17:52, since she was eight years old. *Id.* at 12:00-12:08. In other instances when L.R. was in bed facing the window, Mr. Martinez-Colon would put his penis in her vagina. *Id.* at 18:20-18:53.

One time, in the middle of the night, L.R. was awakened to the feeling of Mr. Martinez-Colon's penis inside of her butt. *Id.* at 13:56-14:15. He was touching her under her clothing. *Id.* She pretended to continue sleeping. *Id.* Mr. Martinez-Colon stopped when he realized L.R. was awake. *Id.* He pulled up her P J bottoms and went over to the other bed. *Id.* at 12:14-15:06. This incident occurred one day before he was arrested. *Id.*

In another incident, L.R. was falling asleep on her bed when Mr. Martinez-Colon touched her under the covers and attempted to pull down her pants. N.T., 05/09/2023, at 78. She was positioned on her back. *Id.* Her feet were on his shoulders, and Mr. Martinez-Colon was sitting up facing her. *Id.* He attempted to remove her pajama pants. *Id.* at 78-79. He pulled her pants to her mid-thigh before stopping. *Id.*

L.R. disclosed the abuse once to her sister, A.R., who reported her own abuse. *Id.* at 87. Their mother inquired whether Mr. Martinez-Colon had ever done anything to her. *Id.* L.R. had been hesitant to disclose previously because she felt "some parents don't believe their child on some stuff." *Id.* at 86. L.R.'s medical exam showed no signs of physical trauma. Ex. D-4. After Mr. Martinez-Colon's arrest, L.R. was placed in the foster care

system for years, separated from her siblings and her mother. N.T., 05/09/2023, at 87-88.

Mr. Martinez-Colon also sexually abused and raped the complaining witness, A.R., while she was between the ages of 11 and 15. N.T., 05/09/2023, at 21, 25. When A.R. was approximately 11 years old, Mr. Martinez-Colon started play-fighting with her, which included smacking her buttocks and grabbing her buttocks. *Id.* at 32-33. Other times he smacked her buttocks and commented on her growing body. *Id.*

Around the same time, he began touching other parts of her body at night in bed. This included rubbing under her chest under her bra, which she recalls happening at least five times. *Id.* at 38-39; Ex. C-3, at 15:20-16:42. She woke up to discover him fondling her. Ex. C-3, at 15:20-16:42, 20:15-21:30. She also recounted how he rubbed his fingers on her vagina over her clothes approximately 15 times, and under her clothes "inside" her vagina 10-15 times. *Id.* at 20:45-21:30; N.T., 05/09/2023, at 26-30.

When A.R. was 12 years old, Mr. Martinez-Colon performed oral sex on her at night when she was getting ready to go to sleep. N.T., 05/09/2023, at 39-41. He instructed her to pretend that he was a boy that she liked. *Id.* at 40-41.

In another incident when she was 12 or 13 years old, Mr. Martinez-Colon was lying with A.R. on the couch. N.T., 05/09/2023, at 35-37. He pulled down her pants and put the tip of his penis in her butt. *Id.* at 35. She remembered it being wet. *Id.* She moved away and said she did not want to do that. *Id.* 36-37. He went to the bathroom, and she noticed that the couch was wet. *Id.*

When A.R. verbally protested to Mr. Martinez-Colon about him touching her, he would become upset and discipline her. *Id.* at 30, 63-64; Ex. C-3, 19:10-21:30. He punished her by taking her phone away from her and commenting that she had an "attitude" problem. N.T., 05/09/2023, at 34; Ex. C-3, 19:10-21:30. When she refused his advances in the bedroom, the next day he remained mad at her and yelled at her for anything that she did. Ex. C-3, 19:10-21:30. He told her, "You always have an attitude." *Id.*

A.R. was confused by what was happening with Mr. Martinez-Colon because the physiological response "felt good." N.T., 05/09/2023, at 28, 40. A.R. also explained that she felt that she was afraid that people would not believe her or that her mother "would think it was my fault, and I would get in trouble." *Id.* at 32. When she was 12 or 13 years old, she reported the abuse to the dean of her school, but when DHS investigated, she denied that anything happened because she was scared. *Id.* at 43.

At 15 years old, A.R. told her cousin. *Id.* at 44-45, 90. DHS investigated again. *Id.* During her forensic interview, A.R. disclosed Mr. Martinez-Colon's touching and fondling of her. *Id.* It was only at the trial, five years later, that she reported the oral sex and attempted anal penetration. At trial, she explained the reason for the delayed report was that she was embarrassed for herself and concerned for Mr. Martinez-Colon's well-being. *Id.* at 38, 41, 43. After years of therapy, it was easier for her to discuss the other events. *Id.* at 56-57, 64-65.

Trial Court Opinion, at 2-5 (headings removed).

The trial court found Martinez-Colon guilty of 10 counts of offenses against L.R. and 14 offenses against A.R.[1] On July 14, 2023, the trial court

---

[1] With respect to L.R. the court found him guilty of: unlawful contact with a minor (18 Pa.C.S.A. § 6318(a)(1)), sexual assault (18 Pa.C.S.A. § 3124.1), false imprisonment (18 Pa.C.S.A. § 2903(a)), endangering the welfare of a child (18 Pa.C.S.A. § 4304(a)(1)), rape of a child (18 Pa.C.S.A. § 3121(c)), involuntary deviate sexual intercourse (IDSI) with a person less than 16 (18 Pa.C.S.A. § 3121(a)(7)), IDSI with a child (18 Pa.C.S.A. § 3121(b)), rape of an unconscious person (18 Pa.C.S.A. § 3121(a)(3)), IDSI with an unconscious person (18 Pa.C.S.A. § 3123(a)(3)), and indecent assault of a person less than 13 (18 Pa.C.S.A. § 3126(a)(7)).

With respect to A.R., the court found him guilty of: unlawful contact with a minor (18 Pa.C.S.A. § 6318(a)(1)), aggravated indecent assault without consent (18 Pa.C.S.A. § 3125(a)(1)), sexual assault (18 Pa.C.S.A. § 3124.1), endangering the welfare of a child (18 Pa.C.S.A. § 4304(a)(1)), corruption of minors (18 Pa.C.S.A. § 6301(a)(1)(ii), indecent assault without consent (18 Pa.C.S.A. § 3126(a)(1)), aggravated indecent assault by forcible compulsion (18 Pa.C.S.A. § 3125(a)(2)), aggravated indecent assault of a person less

*(Footnote Continued Next Page)*

held a sentencing hearing. Martinez-Colon was sentenced to a guideline sentence with an aggregate term of 38.5 to 77 years of incarceration followed by 3 years of probation.

Martinez-Colon filed post-sentence motions which were granted in part and denied in part. The trial court granted judgment of acquittal on the charge of false imprisonment against L.R. Also, the trial court granted Martinez-Colon's motion for reconsideration of sentence on the indecent assault without consent and indecent assault of a person under 16 years old charges against A.R., and resentenced Martinez-Colon on those offenses to no further penalty. Martinez-Colon's other post-sentence motions were denied. He timely appealed. Martinez-Colon and the trial court complied with Pa.R.A.P. 1925.

Martinez-Colon raises eight issues on appeal. He challenges the sufficiency of the evidence for various convictions, the weight of the evidence, the legality of his sentence, and the discretionary aspects of his sentence. ***See*** Appellant's Brief, at 4-7.

We first address Martinez-Colon's sufficiency claims.

> In addressing this challenge, our well-settled standard of review is *de novo*, and our scope of review is limited to the evidence admitted at trial viewed in the light most favorable to the Commonwealth as verdict winner. We determine whether the

_____

than 16 (18 Pa.C.S.A. § 3125(a)(8)), aggravated indecent assault by threat of forcible compulsion (18 Pa.C.S.A. § 3125(a)(3)), aggravated indecent assault of an unconscious person  (18 Pa.C.S.A. § 3125(a)(4)), indecent assault by threat of forcible compulsion (18 Pa.C.S.A. § 3126(a)(3)), indecent assault by forcible compulsion (18 Pa.C.S.A. § 3126(a)(2)), indecent assault of an unconscious person (18 Pa.C.S.A. § 3126(a)(4)), and indecent assault of a person less than 16 (18 Pa.C.S.A. § 3126(a)(8)).

evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. The Commonwealth can meet its burden by wholly circumstantial evidence.

The factfinder, while passing on the credibility of the witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the factfinder.

*Commonwealth v. Salinas*, 307 A.3d 790, 793 (Pa. Super. 2023) (internal citations, quotation marks, and brackets omitted).

Martinez-Colon challenges the sufficiency of the evidence for his conviction of unlawful contact with a minor against both L.R. and A.R. He argues that the Commonwealth failed to establish that he communicated with L.R. and A.R. for sexual purposes. *See* Appellant's Brief, at 20-25.

A person is guilty of unlawful contact with a minor if he "is intentionally in contact with a minor . . . for the purpose of engaging in any activity prohibited under [Chapter 31 of the Crimes Code (relating to sexual offenses)], and either the person initiating the contact or the person being contacted is within this Commonwealth." 18 Pa.C.S.A. § 6318(a)(1).

The statute defines "contact[]" as:

Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c). As such, "[e]ven though the statute is titled 'unlawful contact with a minor,' it is best understood as 'unlawful communication with a minor.'" ***Commonwealth v. Rose***, 960 A.2d 149, 152 (Pa. Super. 2008) (emphasis omitted). Any communication, verbal or non-verbal, suffices so long as it is "designed to induce or otherwise further the sexual exploitation of children." ***Commonwealth v. Strunk***, 325 A.3d 530, 543 (Pa. 2024).

The Commonwealth concedes that based on our Supreme Court's intervening decision in ***Strunk*** there was insufficient evidence to convict Martinez-Colon of unlawful contact with a minor against L.R. In ***Strunk***, Strunk was convicted of unlawful contact with a minor for pulling down the victim's pants while she pretended to sleep before inserting his penis in her vagina. ***See id.*** at 531-32. Our Supreme Court vacated Strunk's conviction reasoning that such conduct was not communicative. ***See id.*** at 543.

Similarly, here, the alleged contact was Martinez-Colon removing L.R.'s pajama bottoms while her feet were positioned on top of his shoulders. ***See*** Trial Court Opinion, at 14. Importantly, L.R. testified that this occurred while she was sleeping and caused her to wake up. ***See*** N.T., 5/9/23, at 78-79. Under ***Strunk***, this physical act while L.R. was asleep was not communicative. Further, he never said anything to L.R. during the other occasions when he assaulted her. ***See*** Commonwealth's Brief, at n.5.

We appreciate the Commonwealth's candor and agree that based on ***Strunk*** there was insufficient evidence to convict Martinez-Colon of unlawful

contact with a minor against L.R. Therefore, we reverse his conviction of unlawful contact with a minor against L.R.[2]

Conversely, there was sufficient evidence to convict him of unlawful contact with a minor against A.R. A.R. testified that on at least one occasion, Martinez-Colon instructed her to pretend that he was "a boy that [she] like[d]" while he performed oral sex on her. N.T., 5/9/23, at 39-41. This was clearly a verbal communication from Martinez-Colon to further the sexual exploitation of A.R. Therefore, his argument that there was insufficient evidence to supports his conviction of unlawful contact with a minor against A.R. is without merit.

Next, Martinez-Colon challenges the sufficiency of the evidence for his convictions of aggravated indecent assault by forcible compulsion, aggravated indecent assault by threat of forcible compulsion, indecent assault by forcible compulsion, and indecent assault by threat of forcible compulsion against A.R. Specifically, he argues that the Commonwealth failed to establish the elements of forcible compulsion or threat of forcible compulsion. *See* Appellant's Brief, at 26. He argues that A.R. did not succumb to the sexual abuse due to force, threat of force, or psychological fear but rather because she was confused about the abuse and afraid to tell her mother. *See id.* at 27-28. Further, he claims that the trial courts conclusion that he committed

---

[2] Similar to the circumstances in ***Strunk***, "[a]s the sentence for this conviction was imposed concurrently, this result does not impact the aggregate sentence and, therefore, does not disturb the sentencing scheme." ***Strunk***, 325 A.3d at 543 n.3.

forcible compulsion through "emotional manipulation" of his parental authority was not supported by A.R.'s testimony. *See id.* at 28 (quoting Trial Court Opinion, at 16).

"Forcible compulsion" is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S.A. § 3101 (definitions). Forcible compulsion can be "subtle and psychological." *Commonwealth v. Dorman*, 547 A.2d 757, 762 (Pa. Super. 1988). "The inquiry is whether the defendant's physical, intellectual, moral, emotional, or psychological force compelled the victim to submit to intercourse against the victim's will, not whether the victim resisted the compulsion." *Commonwealth v. Banniger*, 303 A.3d 1085, 1093 (Pa. Super. 2023) (citation omitted).

> Whether a defendant used forcible compulsion depends on the totality of the circumstances, including this non-exhaustive list of factors:
>
> > the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

*Id.* at 1092-93 (citation omitted).

A.R.'s testimony established that Martinez-Colon committed forcible compulsion by asserting his parental authority over A.R. to compel A.R. to

submit to his sexual abuse. The trial court adequately summarized the evidence:

> Mr. Martinez-Colon used emotional manipulation and his parental authority to coerce A.R.'s compliance with his various sexual activities, including groping her buttocks and chest, and fondling and digitally penetrating her genitals. Mr. Martinez-Colon was A.R.'s father and was fulfilling that role in a custodial capacity at the time of the assaults. N.T., 05/09/2023, at 22-24. He served an important emotional role as in A.R.'s life as her father. He also had the full authority of a parent to discipline her. He used the levers of parental power to exact A.R.'s compliance with his repeated grouping, fondling, and digital penetration of her genitals. When she resisted his advances, Mr. Martinez-Colon disciplined her by taking away her phone or scolding her. N.T., 05/09/2023, at 30, 63-64; Ex. C-3, 19:10-21:30. He also punished her and scolded her as having an "attitude" when she expressed anger or annoyance at having her buttocks grabbed or smacked. N.T., 05/09/2023, at 33-34. The Court also notes the "atmosphere and physical setting" in which most of the assaults took place – a bedroom in the family home late at night with the door closed with just himself and A.R. inside. *Id.* at 66.

Trial Court Opinion, at 16.

We agree with the trial court that this amounted to forcible compulsion. Martinez-Colon used his parental authority to scold and discipline A.R., his minor daughter, for refusing his sexual advances. **See Banniger**, 303 A.3d at 1093. Therefore, Martinez-Colon's argument is without merit.

Next, Martinez-Colon challenges the sufficiency of the evidence for aggravated indecent assault of an unconscious person against A.R. He argues that there was no trial testimony to support the charge, and the only evidence came from A.R.'s PCA interview, which was vague as to whether A.R. was unconscious during the commission of aggravated indecent assault. **See**

- 11 -

Appellant's Brief, at 31-32. According to Martinez-Colon, in A.R.'s PCA interview A.R. "vaguely described once being half asleep after waking up and being on the phone after which time she saw and felt [Martinez-Colon's] fingers in her vaginal area and pushed [him] away telling him to leave her alone." *Id.* at 31.

"[A] person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body . . . commits aggravated indecent assault if: (4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring[.]" 18 Pa.C.S.A. § 3125(a)(4). "A person is unconscious for purposes of the statute when they lack the conscious awareness they would possess in the normal waking state." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citations omitted).

In the audio recording of A.R.'s PCA interview, which was admitted into evidence for the factfinder to consider, A.R. clearly described an incident where she was "half asleep" and "woke up" to Martinez-Colon's finger being inside her vagina. *See* Exhibit 3, at 20:15-21:30. This differs from Martinez-Colon's assertion that A.R. provided only a vague description of the incident. A.R.'s clear description of being half asleep and waking up to Martinez-Colon's fingers being inside her vagina sufficiently established the element of unconsciousness because being half asleep is less than the conscious awareness in the normal waking state. *See Widmer*, 744 A.2d at 753. Therefore, Martinez-Colon's argument is without merit.

For Martinez-Colon's last challenge to the sufficiency of the evidence he claims there was insufficient evidence for rape, IDSI, and sexual assault against L.R. He asserts that there was insufficient evidence to establish the element of penetration. **See** Appellant's Brief, at 32. Specifically, he argues that L.R.'s statement that he put his penis in her "bottom" or "butt" and, on a separate occasion in her vagina, without providing any further description was insufficient to establish penetration. **See id.** at 33-34.

To be convicted of IDSI, the Commonwealth must establish "deviate sexual intercourse." **See** 18 Pa.C.S.A. § 3123(a). The crime of rape requires "sexual intercourse." **See** 18 Pa.C.S.A. § 3121(a). Sexual assault requires evidence of either sexual intercourse or deviate sexual intercourse. **See** 18 Pa.C.S.A. § 3124.1.

> **"Deviate sexual intercourse."** Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.
>
> **"Sexual intercourse."** In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required.

18 Pa.C.S.A. § 3101 (definitions).

Although deviate sexual intercourse also includes acts involving foreign objects and sexual acts with animals, the relevant distinction from sexual intercourse is that "[v]aginal sex—inserting a penis into a vagina, the 'ordinary meaning' of sexual intercourse—is not included in the definition of deviate

sexual intercourse." ***Banniger***, 303 A.3d at 1092 (citation omitted). Both definitions require "penetration however slight."

There was sufficient evidence that Martinez-Colon engaged in vaginal and anal intercourse with L.R. to sustain his convictions of rape, IDSI, and sexual assault. L.R. clearly described an incident where she woke up to find his penis inside her vagina. **See** Exhibit 4, at 18:40-18:55. Further, we reject Martinez-Colon's contention that L.R.'s description of anal penetration was insufficiently vague. L.R. described that she felt his penis in her "bottom" and "butt." ***Id.*** at 13:55-14:40. This was sufficient to establish anal penetration. Additionally, L.R. stated that there were "other times" that he inserted his penis in her butt and that it had been happening "for a long time." **See** Exhibit 4, at 17:20-17:55. Therefore, Martinez-Colon's argument is without merit.

Next, Martinez-Colon argues his convictions were against the weight of the evidence. He asserts the following reasons for the verdicts being against the weight of the evidence: the lack of a prompt complaint, the "vagaries" of the victims' description of events, inconsistencies between the victims' out of court statements and testimony, the lack of physical evidence, and lack of suspicion from any other members of the household or unusual behavior by the victims. **See** Appellant's Brief, at 34-35.

As explained above, the victims' descriptions of the events were sufficient to sustain each conviction other than unlawful contact with a minor against L.R. Their testimony alone was sufficient for the trial court to find Martinez-Colon guilty beyond a reasonable doubt. ***See Commonwealth v.***

*Johnson*, 180 A.3d 474, 479 (Pa. Super. 2018). His additional assertions regarding the evidence were factors for the factfinder to consider in determining the credibility of the victims. The trial court found the victims to be credible. We do not disturb such credibility determinations. *See Salinas*, 307 A.3d at 793. Therefore, Martinez-Colon's argument is without merit.

Next, Martinez-Colon claims that his sentence for unlawful contact with a minor against A.R. was illegal for two reasons. First, he argues that the evidence presented does not support the first-degree felony grading of his conviction of unlawful contact with minors against A.R. *See* Appellant's Brief, at 36-38. Second, he argues that his sentence for unlawful contact with a minor against A.R. was illegal because the bill of information did not specify for which underlying offense he contacted A.R. *See id.* at 38-41. Neither argument merits relief.

The grading for the offense of unlawful contact with a minor is based upon the underlying offense for which the defendant contacted the minor. *See* Pa.C.S.A. § 6318(b)(1). "[A] defendant need not be convicted of a Section 6318(a)(1) to (6) offense to be found guilty of unlawful contact with a minor, and in fact need not even be separately charged with the underlying offense." *Commonwealth v. Pope*, 216 A.3d 299, 304 (Pa. Super. 2019) (citations omitted).

The trial court acknowledged that Martinez-Colon was not charged with an underlying Chapter 31 offense that was graded as a first-degree felony. "However, the evidence was sufficient to establish that Mr. Martinez-Colon

communicated with A.R. for the purpose of engaging in the first-degree felony of IDSI with a child." Trial Court Opinion, at 15 (citation omitted). We agree.

"A person commits [IDSI] with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). A.R. testified that when she was 12 years old Martinez-Colon "used his mouth on [her] vagina." N.T. 5/9/23, at 39. During this incident he communicated with A.R. to further her sexual exploitation by instructing her to pretend that he was a boy that she liked. *See id.* at 40-41. Therefore, there was sufficient evidence to support the grading of Martinez-Colon's unlawful contact with a minor against A.R. conviction as a first-degree felony.

Second, we agree with the Commonwealth that Martinez-Colon's additional argument does not implicate the legality of his sentence but rather challenges the sufficiency of the bill of information. He waived this argument by failing to file a pre-trial motion to quash the information. *See **Commonwealth v. Parmar***, 672 A.2d 314, 316 (Pa. Super. 1996), *aff'd*, 710 A.2d 1083 (Pa. 1998); Pa.R.Crim.P. 578. Further, his argument that he did not have notice falls flat. Unlawful contact with a minor was the only first-degree felony offense against A.R. for which Martinez-Colon had been charged. **See** Information, 1/17/2019. Therefore, he was on notice that the underlying offense for which the Commonwealth would attempt to prove unlawful contact with a minor against A.R. was not an offense for which he had been charged. Therefore, his argument is without merit.

In his final issue, Martinez-Colon challenges the discretionary aspects of his sentence. He argues that, as a man in his early forties, his 38.5 to 77 years term of incarceration was an excessive de facto life sentence that the trial court imposed based on "aggravated factors" that were not supported by the evidence. *See* Appellant's Brief, at 42-45. His argument is without merit, and the record provides support for the substantiation of the sentence.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Pisarchuk*, 306 A.3d 872, 878 (Pa. Super. 2023) (citation and brackets omitted). When an appellant challenges the discretionary aspect of a sentence, we must first determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Lawrence*, 313 A.3d 265, 284 (Pa. Super. 2024) (citation and brackets omitted).

Martinez-Colon has timely appealed, preserved the issue in his post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we must consider whether Martinez-Colon has raised a substantial question.

A substantial question is raised when an appellant "sets forth a plausible argument that the sentence violates a provision of the Sentencing Code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Bullock*, 170 A.3d 1109, 1122 (Pa. Super. 2017) (citation and brackets omitted). We find that Martinez-Colon's claim that the trial court considered "aggravated factors" unsupported by the evidence in imposing an excessive de facto life sentence raises a substantial question. *See Commonwealth v. Rhodes*, 990 A.2d 732, 745 (Pa. Super. 2009) (sentencing court's reliance on evidence outside of the record raised a substantial question). Therefore, we will address his sentencing claim.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion occurs where the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. In imposing a sentence, the sentencing court must consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

*Commonwealth v. Snyder*, 289 A.3d 1121, 1126 (Pa. Super. 2023) (internal quotation marks and citations omitted).

We find no abuse of discretion. The trial court explained in detail its weighing of the sentencing factors and its reasons for imposing the sentence. *See* Trial Court Opinion, at 22-34; N.T., 7/14/23, 36-41, 53, 61-65. Further, the trial court sentenced Martinez-Colon within the standard range on each count and ran most counts concurrently. As the trial court recognized, his

sentence was less than one-third the length of the aggregate guideline sentence if each count were run consecutively. *See* Trial Court Opinion, at 31. He offers no compelling reason why the imposition of such a sentence, in a case where he repeatedly sexually abused his minor daughter and stepdaughter over a period of three years, is manifestly excessive. Therefore, Martinez-Colon's challenge to his sentence fails.

Accordingly, we reverse Martinez-Colon's conviction and judgment of sentence as to unlawful contact with a minor against L.R. and affirm his judgment of sentence for all remaining counts.[3]

Conviction and judgment of sentence reversed as to unlawful contact with a minor against L.R.; furthermore, the employment condition of the probationary sentence is vacated. Judgment of sentence is otherwise affirmed. Jurisdiction relinquished.

_____

[3] As a final matter, in his concise statement Martinez-Colon stated that the imposition of a condition of employment as part of his probationary sentence was inappropriate considering the length of his term of incarceration. The trial court agrees and requests that we remand to the trial court to remove the employment condition. *See* Trial Court Opinion, at 34. However, Martinez-Colon abandoned this argument by not raising it in his appellate brief. Although we readily could find waiver of this issue, out of the interests of justice, we will comply with the trial court's request but instead of remanding the case back to the trial court, we order that the employment condition is vacated from the conditions of the probationary sentence.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2025