J-A18029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS JOHNSON, | : | |
| | : | |
| Appellant | : | No. 202 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 9, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002707-2020

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED JULY 31, 2025**

Thomas Johnson ("Johnson") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of third-degree murder, violations of the Uniform Firearms Act, and possessing an instrument of crime.[1] Johnson challenges the sufficiency and weight of the evidence to support his convictions, as well as the discretionary aspects of the sentence imposed. We affirm.

On November 17, 2019, Shamir Weary ("Weary") and Jaelyn Gilliard ("Gilliard") were sitting in a vehicle on Wayne Avenue in Philadelphia when Johnson approached the vehicle and shot Weary fifteen times and shot Gilliard in the foot. Weary was able to drive away but died soon after the shooting.

---

[1] 18 Pa.C.S. §§ 2502(c), 6105(a)(1), 6106(a)(1), 6108, 907(a).

Philadelphia Police responded to the incident and found Weary dead beside his car. They went to a secondary scene further down the road at 4900 Wayne Avenue and found Larry Thompson ("Thompson") sweeping broken glass and spent shell casings. Police arrested Thompson, who told them that he had been drinking at a deli when he saw an individual he called "Weedman," from whom he often bought crack cocaine, shoot into a vehicle and run off down the street.

Detectives reviewed surveillance footage from the crime scene that showed an individual loitering outside of a Chinese grocery store before shooting into the driver's side window of Weary's vehicle and then running past the store where Thompson was drinking. Thompson was captured in the footage at the deli with a can of beer in his hand. Thompson was called back into the precinct and identified a photograph of Johnson as Weedman.

Police arrested Johnson, and the Commonwealth charged him with numerous crimes, including first-degree murder. Prior to trial, the Commonwealth agreed to drop the first-degree murder charge and proceed with a third-degree murder charge if Johnson agreed to waive his right to a jury trial. As a result, Johnson waived his right to a jury trial and a bench trial followed.

At trial, the Commonwealth called Thompson as a witness. Thompson could not immediately identify Johnson or place him at the scene of the crime. The prosecutor then read him his prior statement, and Thompson testified to

his recollection of his statement to the police and identified Johnson as the shooter. On cross-examination, Thompson admitted to being a drug addict and indicated he may have been high at the time of the shooting. The Commonwealth also introduced surveillance footage from the shooting as well as testimony from Rhonesia Brooks ("Brooks"), Weary's mother. Brooks watched the video of the shooting and identified the shooter as Johnson when she spoke to police in 2019, but identified someone else in the video as Johnson at trial.

The trial court convicted Johnson of the above-listed crimes. Subsequently, the trial court sentenced Johnson to eighteen to thirty-six years of imprisonment for his third-degree murder conviction, followed by concurrent terms of five years of probation for possession of a firearm prohibited and carrying a firearm without a license.[2] Johnson filed a post-sentence motion, which was denied by operation of law on November 28, 2023.[3] He then filed this appeal, and a court-ordered concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

---

[2] The trial court imposed no further penalty on the remaining convictions.

[3] The trial court states in its opinion that as a result of a "clerical error," the court did not serve Johnson with notice of the denial until December 22, 2023. Trial Court Opinion, 12/31/2024, at 2 n.7; *see also* Pa.R.Crim.P. 720(B)(3)(c) ("When a post-sentence motion is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the court, and, as provided in Rule 114, forthwith shall serve a copy of the order on the attorney for the Commonwealth, the defendant's attorney, or the defendant if unrepresented, that the post-sentence motion is deemed denied. This order is not subject to reconsideration."). This constitutes a breakdown in the court processes and

Johnson raises the following issues for our review:

1. Was the evidence sufficient to support [Jonhson]'s conviction for third-degree murder, violations of the Uniform Firearms Act and possessing an instrument of crime where the only evidence offered in support of his guilt were the prior inconsistent statement of a witness who was consuming alcohol and drugs at the time of the shooting and where another witness who had previously identified [Johnson] identified another individual as the shooter in court?

2. Did the lower court abuse its discretion in sentencing [Johnson] to a manifestly excessive sentence of eighteen to thirty-six years of imprisonment where the court based its sentence solely on the severity of the crime and failed to properly consider all relevant sentencing factors, including [Johnson]'s difficult childhood and expressions of remorse?

Johnson's Brief at 4.

## Sufficiency of the Evidence

Johnson contends that the evidence was insufficient to support his convictions because he did not commit the crimes. *Id.* at 13. Johnson highlights that the only identification testimony was inconsistent and there was no physical evidence linking him to the shooting. *Id.* at 13, 18. He argues that Thompson's testimony was unreliable because he had been consuming drugs and alcohol at the time of the shooting. *Id.* at 13, 15-17. According to Johnson, even the police officers interviewing Thompson found

---

we therefore consider Johnson's appeal, filed on January 9, 2024, to be timely. *See Commonwealth v. Braykovich*, 664 A.2d 133, 138 (Pa. Super. 1995) (noting "where the defendant's failure to comply with timely appeal rule was caused by clerk of courts' failure to notify him that rule for post-sentence relief had been denied by operation of law, clerk's failure involved breach in court system, and the defendant's appeal was thus timely filed").

him unreliable and did not transcribe some of what he said, nor did they ask how much he had to drink that night. *Id.* at 16-17. Additionally, he contends that Brooks' identification of the shooter is "inherently unreliable" because she could not correctly identify Johnson as the shooter in court. *Id.* at 17. Johnson further notes that there was no evidence presented that he had any motive to kill Weary or shoot Gilliard. *Id.* at 18.

This Court assesses sufficiency claims according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

Identification evidence need not be certain and positive to support a conviction. *Commonwealth v. Williams*, 255 A.3d 565, 579 (Pa. 2021). "Direct evidence of identity is, of course, not necessary and a defendant may

be convicted solely on circumstantial evidence." ***Commonwealth v. Strafford***, 194 A.3d 168, 175-76 (Pa. Super. 2018) (citation omitted).

Here, Thompson testified to hearing gunshots on the night of the shooting. N.T., 1/18/2023, at 35. However, he claimed not to have seen Johnson before or known him. *Id.* at 54, 57-58. The Commonwealth then showed Thompson the statement he previously gave to police, which he acknowledged as accurate. *Id.* at 60-62. In that statement, Thompson said he often saw Johnson and bought crack cocaine from him on multiple occasions. *Id.* at 68, 72. Thompson also identified Johnson as the shooter. *Id.* at 60-65, 83-84.

Detective Lucke, an expert in digital surveillance recovery and analysis, testified to security camera footage from near the shootings that showed the shooter loitering in a store nearby and shooting into the car. *Id.* at 15-22. Lucke also testified that Thompson was in a good position to view the shooting and was looking out of the window at the time the shooting occurred. *Id.* at 24-26.

Brooks was shown the security footage from the shooting during her testimony and mistakenly identified another person in the video as Johnson. *Id.* at 54-55. Brooks acknowledged her previous statement to the police and its accuracy, however, which correctly identified Johnson in the footage. *Id.* at 56-58. Brooks also testified to seeing Johnson multiple times before the

shooting and having a conversation with him prior to the shooting. N.T., 1/19/2023, at 46-53.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the record supports a finding that Johnson was the person who shot and killed Weary. Although neither Thompson nor Brooks identified Johnson as the shooter at trial, evidence was presented that they both did so in prior statements to the police. As our Supreme Court has held, criminal convictions resting on witnesses' prior inconsistent statement can be sufficient to sustain the convictions where the witnesses testified at trial and the factfinder could assess their credibility. *Commonwealth v. Brown*, 52 A.3d 1139, 1171 (Pa. 2012).

As to Johnson's contention that the statements Thompson and Brooks made to police were unreliable, this is a challenge to the weight of the evidence, not its sufficiency. *See Commonwealth v. Barkman*, 295 A.3d 721, 733 (Pa. Super. 2023) (noting that reliability of evidence is a challenge to the weight of evidence, not the sufficiency of the evidence); *see also Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa. Super. 2022) (stating our review of a challenge to the sufficiency of the evidence to support a conviction "does not include an assessment of [the] credibility of testimony;" such arguments "are more properly characterized as challenges to weight of evidence"). The record reflects that Johnson did not raise a weight claim before the trial court or in his Rule 1925(b) statement; thus, the claim is

waived.  *See Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011) (concluding that contention that the verdict was against the weight of the evidence is waived based on his failure to raise that issue below).[4]

The absence of evidence of motive likewise does not entitle Johnson to relief.  The law is clear that proof of motive is not an element of any of the crimes for which Johnson was convicted.  *See* 18 Pa.C.S. §§ 2502(c), 6105(a)(1), 6106(a)(1), 6108, 907(a); *see also Commonwealth v. Manchas*, 633 A.2d 618, 623 (Pa. Super. 1993) (holding that a lack of evidence of motive "does not constitute a fatal flaw in a third-degree murder conviction," as motive is not an essential element of the crime and is not necessary to warrant a conviction).

The trial court found that the video evidence, combined with the prior statements given by Thompson and Brooks, established that Johnson was the shooter.  Trial Court Opinion, 12/31/2024, at 9-12.  We have independently reviewed the video footage, which corroborates Detective Lucke's testimony that Thompson would have had a good view of the shooting.  It also compares the shooter to Johnson's mugshot, which corroborates Thompson and Brooks'

---

[4] In any event, we note that the factfinder resolves "contradictory testimony and questions of credibility," and "[w]e cannot substitute our judgment for that of the factfinder." *Commonwealth v. Salinas*, 307 A.3d 790, 795 (Pa. Super. 2023).  Here, the judge heard the testimony and watched the video, weighed the evidence, and rendered the guilty verdicts.  *See Commonwealth v. Jacoby*, 170 A.3d 1065, 1078 (Pa. 2017) (explaining the ultimate factfinder is "free to resolve any inconsistencies or discrepancies in the testimony in either party's favor") (citation omitted).

identification of Johnson. We therefore conclude that the evidence was sufficient to support Johnson's convictions.

**Discretionary Aspects of Sentencing**

In his second claim, Johnson challenges the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Baker*, 311 A.3d 12, 18 (Pa. Super. 2024) (citation omitted). To invoke this Court's jurisdiction, Johnson must satisfy the following four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of her appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Rivera*, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citation and brackets omitted). A substantial question is determined on a case-by-case basis and "exists only when the appellant advanced a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McCain*, 176 A.3d 236, 240 (Pa. Super. 2017) (citation omitted).

Johnson filed a timely appeal, a post-sentence motion raising his sentencing challenge, and included a Rule 2119(f) statement in his brief. Further, Johnson's claim that the trial court imposed an excessive sentence

without properly considering mitigating factors raises a substantial question.

*See Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) (finding "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.") (citation omitted). We therefore proceed to review Johnson's discretionary sentencing claim.

> Our standard of review of discretionary sentencing challenge is settled:
>
> Sentencing is a matter vested in the sound discretion of a sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error of judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Baker*, 311 A.3d at 19 (citation omitted).

If the trial court was informed by a presentence investigation report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and [] where the court has been so informed, its discretion should not be disturbed."[5] *Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa. Super. 2022); *see also Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010) (noting that where "the sentencing court had the benefit of

---

[5] These factors include "the protection of the public, the gravity of the offense as it related to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The balancing of these [s]ection 9721(b) sentencing factors is within the sole province of the sentencing court." *Baker*, 311 A.3d at 19 (citation omitted).

a pre[]sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors") (citation omitted).

Johnson contends that the trial court abused its discretion in imposing an excessive sentence that focused solely on the severity of the crime and failed to consider mitigating factors. Johnson's Brief at 21, 22-25, 28. He points to his presentence investigation report, which disclosed his traumatic childhood and his psychiatric conditions. *Id.* at 22-23. Johnson further argues that the sentence did not reflect his expressions of remorse to the victims' family. *Id.* at 23. Instead, he asserts the trial court focused solely upon the serious nature of the crimes and the impact on the Weary's family. *Id.* at 23-24, 28. Johnson seeks a resentencing hearing at which the trial court considers all relevant sentencing factors. *Id.* at 28.

The record reflects that the trial court considered the presentence investigation report, a mental health report, and sentencing guidelines. N.T., 8/09/2023, at 2, 20. The court took into consideration the information listed in the presentence investigation report and Johnson's background. *Id.* at 20; *see also id.* at 22 (noting Johnson had substance abuse issues). The court also listened to the victim impact statements. *Id.* Additionally, the court heard his motive for the shooting during Johnson's allocution, in which he explained that Weary had previously shot him over money and a girl, and that

his life was in danger every time he saw Weary. *Id.* at 17-20. The court further heard Johnson's expression of remorse to the family of the victim. *Id.* at 17-18; *but see id.* at 7 (the Commonwealth notes that in the presentence investigation report, Johnson indicated he had no remorse). The court also recognized the severity of the crime and how it is an example of "vigilante justice" that cannot be tolerated. *Id.* at 21.

We find no basis to conclude that the trial court abused its discretion when sentencing Johnson. Given that the trial court had the benefit of a presentence investigation report, we presume that it was aware of, and considered, all relevant sentencing factors. *See Miller*, 275 A.3d at 535. Further, as noted above, the trial court expressly stated its consideration of the mitigating factors Johnson claims it ignored. Finally, the sentence imposed in this case properly reflected the court's consideration of the seriousness of Johnson's crimes and balanced that against his mitigating factors. *See Baker*, 311 A.3d at 19 (noting that "the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain"). Therefore, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>7/31/2025</u>